**People of the State of Illinois, Plaintiff-Appellee, v. Donald R. Brausam, Defendant-Appellant.**

**Gen. No. 66–149M.**

Second District.

June 14, 1967.

John A. Zaleski, of Fox Lake, for appellant.

Bruno W. Stanczak, State's Attorney, of Waukegan, and William G. Rosing, Assistant State's Attorney, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

This is an appeal from a judgment entered by the trial court finding the defendant, Donald R. Brausam, guilty of drag racing in violation of the provisions of section 48.1 of the Uniform Act Regulating Traffic on Highways. (Ill Rev Stats 1965, c 95½, par 145.1.)

The charge against the defendant was initiated by an unverified "Illinois Uniform Traffic Ticket and Complaint." It was in the form prescribed by Supreme Court Rule, par C, relating to "Procedures in Traffic Cases, Quasi-Criminal Cases and Certain Misdemeanors." (SHA, c 110, par 102.1; also see: Ill Rev Stats 1965, c 16, pars 81–85 incl.) The defendant contends that the judgment

should be reversed in that he had a right to be tried upon a verified complaint, and further, that the complaint was fatally defective since it did not adequately charge the offense of "drag racing."

No pretrial motion was made by the defendant. He proceeded to trial without objection to the form of the complaint. After judgment, he filed a motion in arrest of judgment, asserting, among other things, that the complaint was not verified and that it failed to state a criminal or quasi-criminal offense within the statute under which he was charged.

■ It is readily apparent that the Supreme Court Rule governing procedures in traffic cases, quasi-criminal cases and certain misdemeanors, does not contemplate that the Illinois Uniform Traffic Ticket and Complaint be verified. The court, in People v. Harding, 34 Ill2d 475, 216 NE2d 147, (1966), made an exhaustive analysis of its Rule and the statutes pertaining to the same subject matter. (Ill Rev Stats 1965, c 16, pars 81–85 incl.; c 38, pars 107–9, 107–11, 107–12 and par 111–3(a)(b).) The court there pointed out that there is no constitutional provision requiring verification of the complaint which follows an arrest without a warrant. So far as the relevant constitutional provisions are concerned, they may require a sworn complaint as a prerequisite to the issuance of an arrest warrant, but they do not purport to lay down any jurisdictional prerequisites governing the institution of a criminal prosecution. The court stated at pages 482 and 483:

"The Code of Criminal Procedure, enacted in 1963, retains the substance of the former statutory provisions with respect to the issuance of arrest warrants upon complaints and informations. (Ill Rev Stats 1965, chap 38, par 107–9.) But it also provides for the use of a summons, or a notice to appear, as 'procedures for getting persons into court with-

358

out the necessity and inconvenience of an immediate arrest.' (SHA, chap 38, pars 107.11; 107.12, Committee Comments.) Although, as we have held, there is no constitutional requirement that a complaint must be verified in order to sustain a criminal prosecution, the Code continues the statutory requirement of a sworn complaint. Ill Rev Stats 1965, chap 38, par 111-3(b).

"In many decisions it has been held that a complaint, defective because it was not verified, or verified upon information and belief, did not affect the jurisdiction of the court and that the right to be charged by a properly verified information can be waived. (Citations.) So far as the objection of want of verification is concerned, therefore, the unverified traffic ticket complaint used in this case would have sufficed to give the court jurisdiction if the defendant had waived the objection by going to trial without raising it, or by a plea of guilty.

"The adoption by this court of the rule which authorized the use of the unverified form of Illinois Uniform Traffic Ticket and Complaint was not intended to dispense with the statutory requirement of a verified complaint, and we hold that a defendant who does not waive, by plea of guilty or by proceeding to trial without objection, the defective verification of a complaint, is entitled to be prosecuted upon a complaint which states upon the oath of the complainant the facts constituting the offense charged."

 The most that can be said for the requirement of verification of a traffic ticket and complaint, such as that before us, is that the Code of Criminal Procedure continues the requirement that a complaint be verified in order to sustain a criminal prosecution. (Ill Rev Stats 1965, c 38, par 111-3(b).) The lack of verification, however, does not affect the jurisdiction of the court. The

right to be charged by a properly verified complaint can be waived and, in fact, is waived unless the accused pleads guilty or proceeds to trial without an appropriate pretrial motion or objection. People v. Harding, supra, 482, 483; Village of Willowbrook v. Miller, 72 Ill App2d 30, 34, 217 NE2d 809, (1966). The want of verification was not appropriately raised in the case at bar, and accordingly, we hold that the defendant has waived any right to object to the lack of verification.

The defendant further contends that the complaint was defective on the ground that it failed to sufficiently charge him with the offense of drag racing, in that an essential element thereof is that the defendant engaged in a racing competition; and that the omission of this allegation in the complaint rendered it fatally defective. The traffic ticket and complaint charged the defendant with committing the offense of "drag racing in violation of section 48.1 of the UART, on July 25, 1966, at 9:35 p. m., at North Avenue—west of Trevor Rd. in Lake County, Illinois." (Ill Rev Stats 1965, c 95½, par 145.1.)

Section 111-3(a) of the Criminal Code (Ill Rev Stats 1965, c 38, par 111-3(a)) sets forth the requisites for a valid criminal complaint:

"A charge shall be in writing and allege the commission of an offense by:

"(1) Stating the name of the offense;
"(2) Citing the statutory provision alleged to have been violated;
"(3) Setting forth the nature and elements of the offense charged;
"(4) Stating the time and place of the offense as definitely as can be done; and
"(5) Stating the name of the accused, if known, and if not known, designate the accused by

360

any name or description by which he can be identified with reasonable certainty."

Defendant's contention is that the requirements of subparagraph (3) above are not met, as the necessary element of racing or competition is not alleged. In answering defendant's contention, we must keep in mind that the question before this court is whether the complaint was so defective that it did not charge an offense. That was the issue raised by defendant's motion in arrest of judgment and it is all that we are called upon to decide. People v. Blanchett, 33 Ill2d 527, 530, 531, 212 NE2d 97 (1965).

■■ The purpose of section 111–3(a) of the Criminal Code, as that of section 9 of article II of the Illinois Constitution, is to make certain that the accused will be adequately informed of the nature and elements of the offense charged against him so that he may be able to prepare his defense and protect himself from double jeopardy by subsequent prosecutions for the same offense. People v. Griffin, 36 Ill2d 430, 432, 223 NE2d 158 (1967); People v. Peters, 10 Ill2d 577, 580, 141 NE 2d 9 (1957); People v. Deakyne, 83 Ill App2d 338 (1967); People v. Laczny, 63 Ill App2d 324, 330, 331, 211 NE2d 438 (1965). Whether this objective is attained and the requirements of the section met must be determined by the substance of the charge and not by mere technicalities of its language. People v. Billingsley, 67 Ill App2d, 292, 299, 213 NE2d 765 (1966). "It is clear that many of the old pleading technicalities are no longer required under the existing law. Centuries ago, the punishment was severe and the courts attempted to compensate by strictly construing the pleading requirements. The main requirement today is simplicity in order that the accused will understand the charge against him." People v. Blanchett, supra, 532, 533.

It is sufficient for the purposes of section 111–3(a), and the safeguard it is designed to protect, that the indictment, information or complaint charge the offense in the language of the statute when that statute sufficiently particularizes the offense so that the defendant is notified with reasonable certainty with what he is charged. People v. Sims, 393 Ill 238, 241, 66 NE2d 86 (1946); People v. Billingsley, supra, 298. It is only where the statute does not describe the acts which constitute the crime, (People v. Griffin, supra, 432, 433; People v. Green, 368 Ill 242, 254, 255, 13 NE2d 278 (1938)), or where, by the generality of the statute it may embrace acts which the statute does not intend to punish, that a charge, solely in the language of the statute, is not sufficient. People v. Peters, supra, 580, 581; People v. Billingsley, supra, 299.

However, cases arising under the UART, seldom come before reviewing courts. Section 137 of the Act provides that it is a misdemeanor for any person to violate any of the provisions of the Act, unless by said Act, or other law of this State, such violations are declared to be a felony. (Ill Rev Stats 1965, c 95½, par 234.) Ordinarily, the amount of the fine is small and the offense is not of a serious nature. Such circumstance is true with reference to certain other misdemeanors and quasi-criminal offenses.

To expedite the handling of such cases, the Supreme Court adopted the Rule in question which sets forth the form of the "Illinois Uniform Traffic Ticket and Complaint" and the Rule related generally to traffic cases, quasi-criminal cases and certain misdemeanors. Contemporaneously, the legislature provided "procedures for getting persons into court without the necessity and inconvenience of an immediate arrest." (SHA c 38, pars 107.11, 107.12 Committee Comments.) It also designated officers to let persons charged with quasi-criminal offenses and misdemeanors to bail and to ac-

cept and receipt for fines on pleas of guilty in minor offenses, in accordance with schedules established by Court Rule. (Ill Rev Stats 1965, c 16, pars 81–85 incl.) The Court Rule which the legislature referred to was the Rule heretofore cited.

This Rule and these legislative enactments indicate that a less formal procedure is necessary in the handling of such minor offenses, whereby the person accused may get into court by the traffic ticket, notice to appear or by summons, and without the necessity of arrest. If the person does not obey the notice or summons, then an arrest warrant may issue.

The statement of the issue before us for decision, and the statutes and Court Rule involved, disclose that the overall legislation and Rule are not without ambiguity. The legislative enactments and the Court Rule, being in pari materia, should be construed together to determine the intent of the legislature. The primary object of statutory construction is to ascertain and give effect to such intent, and courts should consider the reason or necessity for the enactment, the contemporaneous conditions, existing circumstances, and the object sought to be obtained by the statutes. People ex rel. Krapf v. Hayes, 13 Ill2d 143, 147, 148 NE2d 428 (1958). We must presume that the several statutes and the Court Rule relative to procedures for the judicial processing of minor offenses within the area herein defined, relate to one subject and are governed by one policy and spirit; and that the legislature intended the several statutes and the Court Rule to be consistent and harmonious. Scofield v. Board of Education, 411 Ill 11, 20, 103 NE2d 640 (1952); Ashton v. County of Cook, 384 Ill 287, 298, 51 NE2d 161 (1943).

The population increase in Illinois over the past decade, a deeper understanding of the use of sanctions in law enforcement, and the increase in the use of automobiles over our improved highways in an effort to meet the

necessity for travel in our complex and growing society are, in part, the reason for getting persons into court without the necessity and inconvenience of an arrest, for letting persons charged with traffic violations, other misdemeanors and quasi-criminal offenses to bail, and for the informal receipting for fines on pleas of guilty in such minor offenses.

From the pertinent legislation and rule, we believe that the legislature intended to create, within our criminal procedure, an expeditious method for the enforcement of traffic offenses, misdemeanors and quasi-criminal offenses, which would relax the rigidity of the requirements of our criminal law for the convenience of the individual, without an impingement upon his rights and without sacrifice of the welfare of society generally. We believe that within the area thus defined by these legislative enactments and the Court Rule, the legislative purpose should be effectuated; and that the principles of construction must not be too literal.

The complaint charged the defendant with "drag racing" as heretofore specified. Under our construction of the aforesaid pertinent statutes and the Court Rule, we find that the charge was sufficiently precise to apprise the accused of the nature and elements of the offense charged. Section 48.1 of the statute clearly defines the meaning of "drag racing" as used in the complaint, as follows:

> "For the purpose of this Section 'drag racing' means the act of 2 or more individuals competing or racing on any street or highway in this State in a situation in which one of the motor vehicles is beside or to the rear of a motor vehicle operated by a competing driver and the one driver attempts to prevent the competing driver from passing or overtaking him or one or more individuals competing in a race against time on any street or highway in this State."

364

The charge of "drag racing" does not include the multitude of different acts which would leave the defendant uncertain as to the particular act which constituted the basis of the offense charged. Such offense is not susceptible of the uncertainty which might result from a charge of "reckless driving." People v. Griffin, supra, 431, 432; People v. Deakyne, 83 Ill App2d 338 (1967) and cases cited therein. Under the "reckless driving" charge, the nature and elements of the offense are left to doubt.

However, the offense of "drag racing" as defined by the statute is not fragmented into many separate and different acts, any one of which may constitute the offense. The statute defines one total offense, the essence of which is the act of competing or racing on any street or highway. We believe that the charge as specified on the UART form clearly apprised the accused of the particular acts on which the charge was based. We hold that the traffic ticket and complaint was not so defective as to fail to charge an offense.

While a person accused of a traffic violation has every right to be informed of the nature and elements of the offense charged against him, we are not unmindful of the circumstances under which traffic tickets are normally issued, and we recognize that they are drafted by laymen and may not be drawn with the care and precision of an indictment, information or complaint charging a more serious offense.

The charge made on the Uniform Traffic Ticket and Complaint form and the charge in quasi-criminal cases and misdemeanors where the accused is brought into court by notice or summons—and without the necessity of arrest—need not be set forth with the same technical precision required in an indictment, verified complaint or information. The charge under the informal procedure for handling these minor offenses must inform the accused of the nature and elements of the offense with which he is charged, but the charge may

be simply stated by reference to the commonly used name for the offense, along with reference to the statute or ordinance alleged to have been violated and the time and place of the violation. If the charge stated sets forth the nature and elements of the offense charged against the accused so that he may prepare his defense and be assured of his constitutional privilege against double jeopardy, then we believe that section 111–3(a)3 of the Criminal Code has been complied with under this informal procedure for processing traffic violations, quasi-criminal cases and other misdemeanors.

 The machinery of government cannot adequately function without a little play in its joints. Without such procedures, the rigid technicalities of the Criminal Code would overtax our judicial system. With the flexibility of our criminal procedures in this limited area of law enforcement, we can adapt the wisdom and experience of the past to these complex problems of the present. Any person may enjoy all of the protective benefits of our Criminal Code by demanding that he be prosecuted by a verified complaint, or he may waive such rights. If an accused elects to proceed to trial under these informal procedures, he is still entitled to be adequately informed of the nature and elements of the offense, but the charge need not be stated with the specificity required in an indictment, verified complaint or information.

In Miranda v. Arizona, 384 US 436, 467, 16 L Ed2d 694 (1966), at page 720, the court stated:

"We encourage Congress and the States to continue their laudable search for increasingly effective ways of protecting the rights of the individual while promoting efficient enforcement of our criminal laws."

Thus, Miranda not only sets forth mandatory guidelines for the administration of criminal justice, but also ex-

horts the States to exercise their own creative methods to bring about independent and constitutionally permissible solutions of such problems. If adequately solved through the construction of existing legislation and court rule, such problems may never reach the federal constitutional level. Such is our intent and purpose herein.

Accordingly, the judgment is affirmed.

Judgment affirmed.

ABRAHAMSON and MORAN, JJ., concur.