**Gary DOVER, Appellant (Defendant below),**

v.

**The STATE of Wyoming, Appellee (Plaintiff below).**

**No. 83–19.**

Supreme Court of Wyoming.

June 9, 1983.

Dan R. Price, II, of Morgan, Brorby, Price & Roberts, Gillette, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Sharon A. Lyman, Sr. Asst. Atty. Gen., Cheyenne, for appellee.

Before ROONEY, C.J., and RAPER, THOMAS, ROSE and BROWN, JJ.

BROWN, Justice.

Appellant is a registered pharmacist who was convicted of knowingly possessing a controlled substance in violation of the law. He contends that the evidence was insufficient to support his conviction, that an affirmative defense available to him was void for vagueness, and that he was found guilty of a charge other than that set out in the information.

We affirm.

## I

Appellant was convicted of violating § 35–7–1031(c), W.S.1977:

"It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to a valid prescription or order of, a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this act. * * * Any person who violates this subsection is guilty of a misdemeanor and may be imprisoned in the county jail not more than six (6) months and fined not more than one thousand dollars ($1,000.00). * * * "

Appellant has two arguments which will be discussed together. He argues that the evidence was insufficient to convict him of violating § 35–7–1031(c), supra. He also argues that he proved the affirmative defense set out in § 35–7–1024(b), W.S.1977:

"(b) Extent of manufacture, distribution or dispensing.—Persons registered by the board under this act [§§ 35–7–1001 to 35–7–1055] to manufacture, distribute, dispense, or conduct research with controlled substances may possess, manufacture, distribute, dispense, or conduct research with those substances *to the extent authorized by their registration and in conformity with the other provisions of this article* [§§ 35–7–1023 to 35–7–1030]." (Emphasis added.)

Appellant moved for a judgment of acquittal, which the trial court denied. Under Rule 30(a), Wyoming Rules of Criminal Procedure, a trial court shall order the entry of a judgment of acquittal upon motion if the evidence is insufficient to sustain a conviction. The trial court must assume that the State's evidence is true and must give the State the benefit of all legitimate inferences. A reviewing court can only overrule the denial of a motion for acquittal when there is no substantial evidence from which reasonable persons could say that the defendant is guilty beyond a reasonable doubt.

" 'Our responsibility in considering the propriety of a ruling on a motion for judgment of acquittal is the same as that of the trial court. * * * It is proper to grant a motion for judgment of acquittal only if there is no substantial evidence to sustain the material allegations relating to the offense that is charged. * * * ' " *Haight v. State*, Wyo., 654 P.2d 1232, 1236 (1982).

Appellant argues that none of the evidence showed that his possession was unauthorized. We disagree. Appellant was registered as a pharmacist entitled to dispense controlled substances. His pharmacist's certificate provided that he was " * * * duly registered and entitled to act as a registered pharmacist *under the pro-*

*visions of the Pharmacy Law now in force* and is permitted to open and conduct a pharmacy, dispensary, drugstore, apothecary shop, or store for the purpose of retailing, compounding, or dispensing drugs, medicines or poisons, and to compound, recommend, dispense and sell at retail drugs, medicines and poisons from the date hereof until the 31st day of December 1981, when this certificate expires." (Emphasis added.)

The jury was instructed that a pharmacist is licensed to dispense controlled substances pursuant to law and that dispensing controlled substances means to deliver them to an ultimate user pursuant to a prescription. Section 35–7–1002(a)(vii), W.S.1977, defines dispensing a controlled substance as the act of delivering it to an ultimate user or research subject by or pursuant to the lawful order of a practitioner. If appellant possessed a controlled substance for any other purpose than to dispense it to an ultimate user, he was in excess of his statutory authority.

The court gave Instruction No. 3 on the elements of the crime:

"The defendant is charged with the crime of possession of a controlled substance. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant knowingly possessed Percodan-demi.

"2. That the defendant was not acting within the authority conferred upon him as a registered pharmacist.[1]

"3. That the incident occurred on or about the 26th day of May, 1982, in Campbell County, Wyoming."

A Mr. Wilk testified at trial. Although Mr. Wilk did not say that appellant was the pharmacist who filled his prescription, the evidence was that he went to get a prescription at the pharmacy where appellant worked, and that appellant was the only pharmacist on duty. The pharmacist who was on duty said that he was out of Percodan-demi, the drug which had been prescribed by Mr. Wilk's dentist. The pharmacist made a telephone call, after he had said that he would have to call the dentist to change the prescription. The dentist received a telephone call from a pharmacist at the pharmacy where appellant worked. Mr. Wilk then received a prescription of Percocet-5. The pharmacist can write up a prescription if ordered over the telephone by a doctor, who must then supply a written prescription to the pharmacy within 72 hours.

There were three prescription slips for the same date in the file for Mr. Wilk, one for Percodan-demi and two for Percocet-5. The two drugs have the same active ingredient. One prescription was in appellant's writing; the other two were in the dentist's. The manager of the pharmacy testified that there was an established procedure for substituting prescriptions. The one which is not filled is cancelled out. That was not done to the Percodan-demi prescription in Mr. Wilk's name. Appellant knew this procedure. The handwritten prescription, the one for Percocet-5, was filled first, according to the numbers on the prescriptions. Then the one for Percodan-demi was filled.

The manager of the pharmacy also testified that she looked in the appellant's lunch bag at around 3:30 or 4:00 of the afternoon appellant was arrested and saw that there was a prescription vial made out to a Mr. Gerald Wilk. She then called Mr. Wilk's dentist to see why there were three prescription slips for the same date in the file for Mr. Wilk. Shortly after, appellant picked up his lunch sack and left the store. As he left, the manager of the store stopped him and asked him to return to the store. The manager had already called the police.

---

1. The State may have assumed more burden than it had to. Section 35–7–1050(a), W.S. 1977, provides:

"(a) It is not necessary for the state to negate any exemption or exception in this act [§§ 35–7–1001 to 35–7–1055] in any complaint, information, indictment, or other pleading or in any trial, hearing, or other proceeding under this act. The burden of proof of any exemption or exception is upon the person claiming it."

Appellant first explained that he was delivering the Percodan-demi to a customer. He later said that he was taking the drugs to his grandmother. The manager of the pharmacy testified that the pharmacy does not make deliveries. She testified that no charge was ever rung up on the register for the Percodan-demi. She also testified that if a prescription was ever delivered, it would be in a sack, stapled shut, with a receipt or charge slip inside the sack. There was no receipt or charge slip inside appellant's lunch sack.

Taking the evidence in the light most favorable to the State, the trial court could easily have concluded that there was substantial evidence to sustain the material allegations relating to the offense, and that the case should therefore go to the jury. The jury could have reasonably inferred that appellant filled the prescription for Percocet-5 which the dentist had ordered over the telephone. Then, instead of cancelling the Percodan-demi prescription as he was supposed to, appellant filled it and put the vial in his lunch sack. Because the store did not make deliveries, and because the prescription charge was never rung up, the jury could reasonably infer that appellant was going to dispose of the drugs in a manner not authorized by law.

Plainly stated, appellant's argument is that the statutes and his license authorize him to take someone else's prescription and use it in any way he sees fit just because he is a pharmacist. Other jurisdictions have interpreted similar statutes. A Massachusetts statute provided:

" 'Except as authorized by this chapter, no person shall knowingly or intentionally manufacture, distribute, dispense, or possess with intent to manufacture, distribute or dispense a controlled substance * * *.' " *Commonwealth v. Comins*, 371 Mass. 222, 356 N.E.2d 241, fn. 1, (1976), cert. denied, 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1976).

The appellant there was a licensed osteopathic physician convicted for illegally dispensing controlled substances. There was a statutory exception for a prescription for a controlled substance " 'issued for a legitimate medical purpose by a practitioner acting in the usual course of his professional practice.' " The court held that a physician illegally dispensed controlled substances when he did not intend to achieve a legitimate medical objective.

In *State v. Mann*, 119 R.I. 720, 382 A.2d 1319 (1978), the court held that the phrase "any person" included physicians in a statute making possession illegal for any person not specifically exempted.

" * * * The stated purpose, as we have noted, is to establish a scheme to identify and protect legitimate drug handlers and to curtail the flow of drugs to persons not legitimately in possession. * * * "

* * * * * *

" * * * They are exempt from the penalties imposed under the Act only when they are registered and acting within the scope of their registration or when they fall into another of those categories of persons otherwise exempted by [another statute]." *State v. Mann*, supra, 382 A.2d at 1321.

In *United States v. Moore*, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975), a doctor was charged with knowing and unlawful distribution and dispensation of methadone. 21 U.S.C. § 841(a)(1) provided:

" 'Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

" '(1) to manufacture, distribute, or dispense or possess with intent to manufacture, distribute, or dispense, a controlled substance * * *.' "

21 U.S.C. § 822(b) provided:

" 'Persons registered * * * under this subchapter to * * * distribute or dispense controlled substances are authorized to possess * * * distribute, or dispense such substances * * * to the extent authorized by their registration and in conformity with the other provisions of this subchapter. * * *.' "

The Supreme Court held that § 822(b) was not "a blanket authorization of all acts by certain persons." It held that

all activities of registered physicians were not exempted under § 841 merely because of their status of physicians. We hold that the same is true for § 35–7–1031(c), supra, and § 35–7–1024(b), supra. The plain language of both statutes makes it clear that the exemptions apply only to the extent authorized by the registration and by law. There is no per se exemption for pharmacists who possess controlled substances. The trial court properly denied the motion for acquittal.

## II

Appellant next argues that § 35–7–1024, supra, which provides an affirmative defense to people who possess controlled substances to the extent of their authority, is unconstitutional because it is void for vagueness. Appellant contends that no one can say what is meant by the words "to the extent authorized by their registration."

As the State points out, this is a strange argument. If we were to nullify the statute which creates an affirmative defense, then appellant would suffer. As the State also points out, appellant is more likely arguing that the vagueness of the wording in § 35–7–1024 makes void the statute under which he was charged.

■ A criminal statute which either prohibits or requires an act " 'in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.' " *Sanchez v. State,* Wyo., 567 P.2d 270, 274 (1977). A vagueness challenge to a statute which does not involve the First Amendment is to be made in light of the facts of the case. *Sears v. State,* Wyo., 632 P.2d 946 (1981). The language has to convey sufficient warning as to the proscribed conduct, measured by common understanding and practices. *United States v. Petrillo,* 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947). The question here, then, is whether appellant could reasonably understand that he was not authorized to possess a controlled substance in the manner he did.

In *United States v. Collier,* 478 F.2d 268 (5th Cir.1973), the court held that a statute which made it illegal for a physician to dispense controlled substances other than in the course of his professional practice was not unconstitutionally vague. The court said:

" * * * Manifestly the language 'in the course of professional practice' is intended to limit the immunity of a licensed practitioner. It is apparent that a licensed practitioner is not immune from the act solely due to his status * * *." *United States v. Collier,* supra, at 271.

■ The appellant in *United States v. Collier* had contended that the statute did not warn him of what conduct was proscribed, and that the statute was without objective standards and subject to diverse interpretation, much as appellant here argues. The court in the *Collier* case held that statutes affecting medical practice do not have to delineate the exact circumstances which set the bounds of permissible practice. We hold that the same concept applies to statutes which pertain to pharmaceutical practice. A pharmacist is expected to dispense controlled substances within the bounds of his authority. Taking a cancelled prescription which is in someone else's name, secreting it in a lunch sack, leaving the premises, and then asserting that the prescription was to be delivered to his grandmother is obviously not within the bounds of a pharmacist's authority.

Appellant argues that criminal statutes are to be construed strictly. We think that what the Supreme Court said in *United States v. Moore,* supra, is appropriate.

" 'The canon in favor of strict construction [of criminal statutes] is not an inexorable command to override common sense and evident statutory purpose. * * * Nor does it demand that a statute be given the "narrowest meaning"; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers.' " 423 U.S. at 145, 96 S.Ct. at 347.

## III

■ Appellant spends a few sentences arguing that the proof varied from the in-

formation. He argues that he was charged with possession but was found guilty of acting outside his authority as a pharmacist. This is semantics. The statute under which appellant was charged, § 35–7–1031(c), supra, states: "It is unlawful for any person knowingly or intentionally to possess a controlled substance * * * except as otherwise authorized by this act."

Further, appellant presented no precedent or cogent argument to support his contention. Because he failed to do so, we will not consider his contention concerning this issue on appeal. *Klatt v. Klatt,* Wyo., 654 P.2d 733 (1982).

Affirmed.